O'CONNOR & GORDON, INC., et al., Plaintiffs, *v.* HANDICRAFT PUBLICATIONS, INC., Defendant.

Supreme Court, Special Term, New York County, October 20, 1954.

*Philip Handelman* and *Elliot A. Wyson* for plaintiffs.

*Philip T. Dalsimer, Haynes N. Johnson* and *Charles H. Green* for defendant.

STEUER, J.   Some time prior to March, 1954, a publishing concern known as Triangle Publications was the owner, through purchase, of the name *Quick* as a magazine title.   At that time it decided to abandon the use of the name.   Plaintiff O'Connor & Gordon, Inc. learned of the abandonment and sought to acquire the name.   Triangle Publications took the position that the name having been abandoned it had nothing to sell.

Plaintiff then took steps to acquire the name.   It got out a newsletter of one sheet which purported to be a weekly publication selling for 15¢ a copy.   Of this about 100 copies were printed, the first issue being dated May 17, 1954.   It was called *Quick*.   The newsletter was a superficial rewriting of a few news items from prominent newspapers and obviously was not a serious attempt to launch a publication of any kind.   Copies were sold to employees in plaintiff's office and were mailed to a list of people, at least one in each State of the union.   This list was supplied by Trade Mark Service Corporation and the mailing was for the purpose of obtaining registrations in the

various States. None of the people to whom the sheet was sent paid for it nor was it intended that they would. Plaintiff did solicit annual subscriptions and did obtain one paid subscription and six additional promises from relatives of its officers and employees. A second issue of like content and distribution was published on May 28th, though dated May 23d. Thereafter publication ceased for some time. On the strength of these publications, plaintiff, who is in the magazine management business, did succeed in having two notices published in trade magazines, and one in *Newsweek* that it was getting out a magazine called *Quick*. These notices were grossly inaccurate in content. On the strength of this user this plaintiff obtained registrations of the name in several States and simultaneously sought to interest one of its clients, the other plaintiff, Pocket Magazines, in the publication of a magazine called *Quick*. Pocket Magazines was the publisher, among other periodicals, of a magazine called *Tempo* which in format and content was very similar to the *Quick* magazine formerly published by Triangle Publications and it agreed to add the name *Quick* to *Tempo* and the new magazine to be a joint venture of both plaintiffs. The first issue of *Tempo* which was also to use the name *Quick* was to be published on September 27, 1954, and the first proofs were received by the printer on July 21, 1954.

Meanwhile defendant, also a magazine publisher, had learned of Triangle Publications' abandonment of the name. After verifying the fact it proceeded to prepare for publication a magazine generally similar to the one formerly published by Triangle Publications under the name *Quick*. By July 21st, its preparations were in an advanced stage. On that day it heard about plaintiffs' activities. It investigated and discovered that the plaintiffs' magazine had not yet gone to press. Thereupon it proceeded with extraordinary haste and succeeded in getting its magazine printed and on the newsstands by July 28th.

In September, 1954, plaintiffs put out a third and last issue of the newsletter. With this the newsletter was discontinued and the money for the sole subscription returned to the subscriber.

On these facts both parties seek to enjoin the other from using the name *Quick*. There are obstacles in the way of both. Plaintiffs acquired no rights from the publication of the newsletter. This was not a commercial user; it was purely *pro forma,* for the sole purpose of acquiring rights by aping the means by which such rights are acquired. Such pretense is not an

acceptable substitute for bona fide use. Nor does a registration confer any rights in the absence of such use (*Rockowitz Corset & Brassiere Corp.* v. *Madame X Co.*, 248 N. Y. 272). So that at the time defendant's magazine appeared plaintiffs had nothing to protect.

Defendant on the other hand was well aware of plaintiffs' activities and preparations. It knew that by using the name in question it was invading doubtful territory. It sought by speed of publication to cut off whatever rights plaintiffs might acquire through legitimate use. The situation is distinct from that presented by an earlier publication in good faith. There even a short period of prior publication gives rights. But this case provides an instance where the race is not to the swift.

Judgment is for defendant on plaintiffs' complaint and for plaintiffs on defendant's counterclaim.