INTERSTATE BRANDS CORPORATION v WAY BAKING
COMPANY

1. APPEAL AND ERROR—FINDINGS OF FACT—STANDARD OF REVIEW—
CLEARLY ERRONEOUS STANDARD—COURT RULES.

A trial court's findings of fact should not be set aside on appeal
unless they are clearly erroneous (GCR 1963, 517.1).

2. TRADE REGULATION—TRADEMARKS—APPROPRIATION AND USE.

Trademark rights arise out of appropriation and use; the right
belongs to one who first appropriates and uses the mark; mere
adoption of a particular mark is inadequate.

3. TRADE REGULATION—TRADEMARKS—USAGE—GOOD FAITH USAGE—
SHAM TRANSACTIONS.

Usage of a trademark must satisfy good faith requirements before
the user will have a right in the trademark and pretense or *pro
forma* use is not an acceptable substitute for bona fide use;
sham transactions designed merely to satisfy the trademark
laws are not acceptable; the good faith commercial use require-
ment is inconsistent with a plan of minimal sales devised for a
trademark maintenance program.

4. TRADE REGULATION—TRADEMARKS—USAGE—GOOD FAITH USAGE—
CASE BY CASE DETERMINATION—BALANCING OF EQUITIES.

Bona fide use of a trademark sufficient to establish trademark
rights in the user can only be determined on a case by case
basis because the equities of each situation must be carefully
balanced; it is the function of the fact finder in any particular
case to balance the equities and determine how a party is
making use of a trademark.

5. TRADE REGULATION—TRADEMARKS—PROHIBITIVE USE—WRONGFUL
USE.

The owner of a trademark may not make a negative and merely

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 822.
[2–4, 6, 7] 74 Am Jur 2d, Trademarks and Tradenames § 12.
[5–7] 74 Am Jur 2d, Trademarks and Tradenames § 15.

prohibitive use of a trademark; use of a trademark solely for a defensive purpose is not a bona fide use.

6. TRADE REGULATION—TRADEMARKS—PURPOSES OF TRADEMARK—DEFENSIVE USE—BONA FIDE USE—EQUITY—BALANCING OF EQUITIES.

It is proper to consider all the purposes that a particular trademark serves to ascertain if a defensive use is mingled with a bona fide use because the equities of each case must be balanced individually; the bona fide uses of a trademark include the functions of designating goods as the product of a particular trader, providing security to a particular business, and acting as a guarantee against deception of the public.

7. TRADE REGULATION—TRADEMARKS—ESTABLISHING A TRADEMARK—MAINTAINING A TRADEMARK—GOOD FAITH USE.

The acts a party undertakes to establish a trademark and the acts a party undertakes to maintain a trademark once it is established are subject to the same requirements of good faith use.

Appeal from Jackson, Russell E. Noble, J. Submitted October 5, 1977, at Lansing. (Docket No. 31305.) Decided November 9, 1977. Leave to appeal applied for.

Complaint by Interstate Brands Corporation against Way Baking Company to enjoin the defendant from using the trademark "Holsum" in the Lansing territory and to recover damages for the defendant's use of the trademark. Judgment for defendant. Plaintiff appeals. Affirmed.

*Susskind & Hedstrom, P. C. (Schmidt, Johnson, Hovey & Williams,* of counsel), for plaintiff.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *John H. Schomer* and *Alan R. Dominick),* for defendant.

Before: D. C. RILEY, P. J., and J. H. GILLIS and R. M. MAHER, JJ.

PER CURIAM. Interstate Brands Corporation brought this action to enjoin defendant, Way Baking Company, from using the trademark "Holsum" in a loosely defined area called the Lansing territory and to recover damages for Way's use of that trademark. The trial court, sitting without a jury, found that plaintiff Interstate was using the trademark "Holsum" as a defensive measure to stifle competition from Way and denied the requested relief. Plaintiff appeals the trial court's decision as of right.

In 1929 the W. E. Long Company first registered the "Holsum" trademark in Michigan. It has since been continuously renewed by Long. Defendant Way is a baking company based in Jackson, Michigan. Way began using the "Holsum" mark in Jackson in 1955 as a licensee of Long.

The Roskam Baking Company was plaintiff's predecessor in the Lansing area. Roskam began operations in the Grand Rapids, Michigan area in the 1930's and did not expand outside of the Grand Rapids area till 1960. In approximately 1945, Roskam commenced use of the name "Holsum" to designate its bakery products being sold in Grand Rapids.

In 1949 Roskam attempted to register the trademark in Michigan but registration was refused because defendant's assignor, W. E. Long, objected on the basis of its prior registration. Later, Long withdrew its objections and permitted registration of the mark by Roskam "in the territory in which Roskam [was then] * * * marketing bread and bakery products under the trade name 'Holsum' ", *i.e.,* the Grand Rapids area. The trademark was renewed by Roskam and assigned to Interstate Brands in 1973 when Roskam sold plaintiff all its assets. The registration contained no geographical limits.

Roskam moved into the Lansing area in 1960 and sold, among other brands, Holsum bread, without objection from defendant. In 1964 defendant Way briefly introduced its product in the Lansing market area under the name "Holsum", but withdrew its product after Roskam objected.

In February, 1974, shortly after the sale of assets by Roskam to plaintiff, defendant began selling bread under the "Holsum" brand in the Lansing area. The trial court found that before defendant's reentry into the Lansing area, from 1970 to 1973, plaintiff had been phasing out the name "Holsum" in favor of the name "Butternut". For those years, the court found, the sale of Holsum bread by Roskam amounted to less than 5% of Roskam's sales. "[After] defendant's re-entry, plaintiff's Holsum product * * * reappeared sporadically".

The trial court accepted the version of events given by defendant's witness, a present employee of Way and a former employee of plaintiff's predecessor, Roskam. It found that before defendant's reentry into the Lansing market area with its Holsum product in 1974, "retail shelves in plaintiff's outlets [had] been bare of its Holsum product * * * . There is no evidence that plaintiff intends in the future to increase its use of the trade name Holsum, and the plaintiff offered no evidence of legitimate business reasons tending to show a lack of intent to abandon the name."

At the outset, we recognize that the standard by which we review the trial court's findings of fact is contained in GCR 1963, 517.1 which provides:

"Findings of fact shall not be set aside unless clearly erroneous. In the application of this principle, regard shall be given to the special opportunity of the trial

court to judge the credibility of those witnesses who appeared before it."

We must view the trial court's conclusions on trademark usage as findings of fact not to be easily disturbed.

Trademark rights arise out of appropriation and use. Generally, the right belongs to one who first appropriates and uses the mark. *United Drug Co v Theodore Rectanus Co,* 248 US 90; 39 S Ct 48; 63 L Ed 141 (1918). But mere adoption of a particular mark is inadequate. Rights grow out of usage. *Trade Mark Cases,* 100 US 82; 25 L Ed 550 (1879), *Hanover Star Milling Co v Metcalf,* 240 US 403; 36 S Ct 357; 60 L Ed 713 (1916).

Usage must satisfy good faith requirements. Pretense or *pro forma* use is not an acceptable substitute for bona fide use. *O'Connor & Gordon, Inc v Handicraft Publications, Inc,* 206 Misc 1087; 136 NYS2d 558 (1954). Sham transactions designed merely to satisfy the trademark laws are not acceptable. *Blue Bell, Inc v Jaymar-Ruby, Inc,* 497 F2d 433 (CA 2, 1974).

What constitutes sufficient bona fide use can only be determined on a case by case basis because the equities of each situation must be carefully balanced. See *Chandon Champagne Corp v San Marino Wine Corp,* 335 F2d 531 (CA 2, 1964). In a particular case, it is the function of the fact finder to balance the equities and determine how a party is making use of a trademark.

The trial court found plaintiff's use of the trademark "Holsum" to be defensive. We realize that in a sense every use of a trademark is defensive. A trademark is a potent weapon in the competitive contest, Callman, *The Law of Unfair Competition, Trademarks, and Monopolies,* § 65, p 3 (3d ed,

1969), which operates as a guarantee to the trademark owner against deprivation of his profit. *Macmahan Pharmacal Co v Denver Chemical Mfg Co,* 113 F 468 (CA 8, 1901). It protects the owner's good will against the sale of another's products as his. *United Drug Co v Rectanus, supra,* at 97.

While a certain amount of defensive use attaches to every use of a trademark, use of a mark solely for a defensive purpose is not bona fide. The owner of a trademark may not make a negative and merely prohibitive use of a trademark. It confers no monopoly in a proper sense. *United Drug Co v Rectanus, supra,* at 97–98. Usage is neither sufficient nor bona fide when contrived for trademark maintenance purposes. The good faith commercial use requirement is inconsistent with a plan of minimal sales devised for a trademark maintenance program. *La Societe Anonyme des Parfums Le Galion v Jean Patou, Inc,* 495 F2d 1265 (CA 2, 1974).

" 'Trademark rights are not created by sporadic, casual, and nominal shipments of goods bearing a mark. There must be a trade in the goods sold under the mark or at least an active and public attempt to establish such a trade. Absent these elements, no trademark can be created or exist.' " *Jean Patou, supra,* at 1274, citing *Clairol, Inc v Holland Hall Products, Inc,* 165 USPQ 214 (Trademark Trial and App Bd, 1970).

In *Jean Patou,* the court determined that any purely defensive use of a trademark is insufficient to obtain enforceable rights in the product.

In a parallel case, *Morton Salt Co v G S Suppiger Co,* 314 US 488; 62 S Ct 402; 86 L Ed 363 (1942), it was held that defensive use of a patent to restrain competition was so adverse to public policy that equity would deny relief. The court stated

that misuse of a trademark, that is, a use which subverts public policy, would force a court of equity to deny plaintiff relief in a trademark infringement case.

Because the equities of each case must be balanced individually, it is proper to consider all the purposes a particular trademark serves to ascertain if a defensive use is mingled with a bona fide use. These bona fide uses include the functions of designating goods as the product of a particular trader, providing security to a particular business, and acting as a guarantee against deception of the public.

In this case, the trial court found plaintiff's use to be solely a defensive measure to which there were no counterbalancing bona fide uses. We cannot say that the finding was clearly erroneous. Interstate's sales of Holsum bread were sporadic, the court found, and its Holsum bread was only placed on shelves where defendant sold its product. No bona fide function of a trademark was served. Plaintiff was selling the bread solely as part of a trademark maintenance program designed to stifle competition. Such usage was not in good faith.

Plaintiff attempts to distinguish the instant case on the ground that Interstate Brands was not attempting to make an initial acquisition of rights to a trademark as were the parties in *Jean Patou* and other cited cases. The distinction is of no moment. The acts a party undertakes to establish a trademark and the acts a party undertakes to maintain a trademark are subject to the same requirements of good faith use. It defies logic to hold that a party may not engage in *pro forma* use to gain the rights initially, but that once those rights are gained, it may rely on pretense as a

substitute for bona fide use. Such an absurd rule would be unfair to competitors and to the public. Cases which require bona fide usage do not depend for their holdings upon *when* the trademark is used but upon *how* it is used. A sham usage is unacceptable whether one is trying to acquire trademark rights or to preserve the rights.

We hold that the use of a trademark solely for a defensive, negative purpose is insufficient to maintain enforceable rights in that trademark. The trial judge found that plaintiff's use of the "Holsum" trademark was for defensive purposes to stifle competition. We cannot say his finding was clearly erroneous.

Affirmed. Costs to defendant.