**DEL–RAIN CORPORATION, Plaintiff–Counter–Defendant–Appellant,**

v.

**PELONIS USA, LTD., Defendant–Counter–Claimant–Appellee.**

**Docket No. 00–9290.**

United States Court of Appeals, Second Circuit.

Jan. 29, 2002.

36

R. Joseph Trojan, Trojan Law Offices, Beverly Hills, CA, for Appellant.

Alex R. Sluzas, Paul & Paul, Philadelphia, PA, for Appellee.

Present SACK, KATZMANN, and BETTY B. FLETCHER,* Circuit Judges.

### SUMMARY ORDER

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of said district court, entered on September 6, 2000, be, and it hereby is, **AFFIRMED.**

Del–Rain Corporation appeals from a final judgment of the United States District Court for the Western District of New York (William M. Skretny, *Judge*), entered after a bench trial, finding Del–Rain liable for breach of contract, unfair competition under section 43(a) of the Lanham Trademark Act, 15 U.S.C. § 1125(a), and unfair competition under New York common law.

The protracted litigation culminating in this appeal arises out of a complex set of facts pertaining to the ownership of the trademark "PELONIS," which has been used on certain ceramic-disc furnace space-heaters since 1986. The district

* Of the United States Court of Appeals for the   Ninth Circuit, sitting by designation.

court held a bench trial from November 8 to November 23, 1999. On September 5, 2000, the court issued its decision, which sets forth detailed findings of fact and conclusions of law.

The district court found that in 1993 Del–Rain developed a strategy whereby it sought to drive the PELONIS name out of the space-heater market by, *inter alia*, introducing two completely new product lines (the "LIFETIME" and "SAFE-TIME" models) while at the same time placing advertisements that suggested that PELONIS model heaters had safety defects. Because this strategy failed, and the public continued to demand PELONIS model heaters—which the appellee Pelonis USA had manufactured for Del–Rain the previous year and then for sale independently—Del-Rain sought to reclaim the PELONIS mark. In August 1994, as part of this effort, it sued Pelonis USA, which counterclaimed successfully for breach of contract and unfair competition.

On appeal, Del–Rain does not challenge the district court's ruling on Pelonis USA's breach of contract claim, but contests the court's findings of fact and conclusions of law pertaining to the PELONIS trademark. In particular, Del–Rain argues that the court erroneously determined that it abandoned the PELONIS trademark in early 1993 and concurrently engaged in bad-faith efforts to undermine Pelonis USA as a competitor.

We apply a "highly deferential standard of review" to a "district court's findings entered after a bench trial." *S.C. Johnson & Son, Inc. v. Clorox Co.,* 241 F.3d 232, 239 (2d Cir.2001). We review findings of fact for clear error and conclusions of law *de novo. Mobil Shipping and Transp. Co. v. Wonsild Liquid Carriers, Ltd.,* 190 F.3d 64, 67 (2d Cir.1999). To find "clear error" in the district court's findings of fact, we must be "left with the definite and firm conviction that a mistake has been committed." *Id.* at 67–68 (quoting *Anderson v. Bessemer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)) (internal quotation marks omitted).

We have reviewed the extensive trial evidence reproduced in the record on appeal and do not find any clear error. To the contrary, we conclude that the record amply supports the district court's factual findings and therefore reject Del–Rain's multiple challenges to them.

■ Del–Rain's principal legal argument on appeal is that the district court misapplied federal law governing the abandonment of trademark rights because it did not find that Del–Rain, which the district court concluded *did* enjoy rights to the PELONIS mark between 1990 and 1993, ever actually ceased to "use" that mark.

Title 15 U.S.C. § 1127 provides that "a mark shall be deemed to be 'abandoned'" if "its use has been discontinued with intent not to resume such use." *Id.* Consistent with this statute, we have held repeatedly that a showing of abandonment requires two elements: "non-use of the name by the legal owner and no intent . . . to resume use in the reasonably foreseeable future." *Stetson v. Howard D. Wolf & Assocs.,* 955 F.2d 847, 850 (2d Cir.1992).

The district court found that Del–Rain discontinued "normal bona fide commercial use [during the period in which Del–Rain abandoned the PELONIS trademark]" because "any 'use' of PELONIS by Del–Rain during this period was to phase out its inventory of PELONIS products," "to undermine the trademark," and "to drive the PELONIS name out of the industry." Slip op. at 77, ¶ 131. It therefore found that Del–Rain abandoned the PELONIS trademark under § 1127.

Del–Rain argues that even assuming the truth of the district court's findings, it nonetheless never actually ceased to "use" the PELONIS mark within the meaning of § 1127. Counsel for Del–Rain emphasized at oral argument that during the period in which the district court found abandonment, Del–Rain sold approximately 25,000 PELONIS model heaters—albeit, according to the court, only in order to unload its remaining PELONIS inventory. Still, Del–Rain contends that this amounts to "use" sufficient to defeat a claim of abandonment.

Del–Rain misconceives the meaning of "use" under the Lanham Act. The Act does not protect *any* use; nor is the quantity of ostensible use—here, the number of heaters sold—necessarily relevant. The Lanham Act provides that " '[u]se' of a mark means *bona fide* use of such mark made in the ordinary course of trade." 15 U.S.C. § 1127 (emphasis added); *see Blue Bell, Inc. v. Jaymar–Ruby, Inc.* 497 F.2d 433, 437 (2d Cir.1974) (noting the "clear line of decisions holding that the use must be bona fide, with token transactions accepted only where there is an accompanying intent to engage in commercial use in the future"); *accord Exxon Corp. v. Humble Exploration Co.,* 695 F.2d 96, 101 (5th Cir.1983) ("The [Lanham] Act does not allow the preservation of a mark solely to prevent its use by others."); *cf. O'Connor & Gordon, Inc. v. Handicraft Publ'ns,* 206 Misc. 1087, 1089–90, 136 N.Y.S.2d 558, 560 (N.Y.Sup.Ct.1954) (holding that under New York State law purely "pro forma" use, intended only to acquire rights, is not "bona fide").

An effort to dispose of the remaining stock of an abandoned line of merchandise does not constitute a "bona fide use . . . in the ordinary course of trade," 15 U.S.C. § 1127, that suffices to defeat a finding of abandonment. *See Uncas Mfg. Co. v.*

*Clark & Coombs Co.,* 309 F.2d 818, 820 (1st Cir.1962). That Del–Rain may have sold 25,000 PELONIS heaters in the course of disposing of an abandoned line of merchandise does not affect the analysis.

■ Del–Rain further argues that the district court neglected to consider Del–Rain's substantial expenditures on advertisements of PELONIS model heaters during the period in which the court found abandonment. The court did not neglect this evidence. It found that Del–Rain's advertisements, which included a consumer safety-advisory suggesting that PELONIS heaters suffered from hazardous defects, were part of Del–Rain's bad-faith campaign to drive the PELONIS trademark out of the industry. *See* Slip Op. at 76–77. Because these advertisements were intended to destroy the PELONIS trademark, they were not part of "an ongoing program to exploit the mark commercially," *Societe Anonyme des Parfums Le Galion v. Jean Patou, Inc.,* 495 F.2d 1265, 1272 (2d Cir.1974); and they therefore do not show "bona fide commercial use" sufficient to defeat the district court's finding of abandonment.

"Bona fide" means: "1. Made in good faith; without fraud or deceit. 2. Sincere; genuine." *Black's Law Dictionary* 168 (7th ed.1999). It is therefore something of an oxymoron to contend that a bad-faith use should be deemed a "bona fide use" within the meaning of § 1127. *Cf. Intrawest Fin. Corp. v. W. Nat'l Bank,* 610 F.Supp. 950, 958 (D.Col.1985) (finding that a "sham use" of a trademark "devised to prevent others from using the mark" did not suffice to establish or preserve rights to that trademark). A bad-faith campaign to destroy a trademark's value and undermine a competitor does not constitute a "bona fide commercial use" that suffices to defeat a finding of abandonment.

We have reviewed Del–Rain's remaining claims and find them to be without merit.

For the foregoing reasons, the judgment of the district court is hereby AFFIRMED.