JANET TRAVIS, INC v PREKA HOLDINGS, LLC

Docket No. 315560. Submitted June 4, 2014, at Detroit. Decided July 31, 2014, at 9:10 a.m.

Janet Travis, Inc., brought an action in the Macomb Circuit Court against Preka Holdings, LLC, for trademark infringement under MCL 429.42. Plaintiff owns a restaurant and has used the surname "Travis" as a mark in connection with its business since the 1940s. It registered the "TRAVIS" mark with the state in 1996 under MCL 429.34. This dispute arose in 2011, when defendant began to operate a restaurant called "Travis Grill," serving what it called the "famous Travis Burger," in the same geographical area as plaintiff's restaurant and licensees. Defendant moved for summary disposition, arguing that because plaintiff's mark was a surname, plaintiff was required to establish that it had acquired secondary meaning by showing that the public associated plaintiff's products or services with that surname. The court, Edward A. Servitto, J., granted an injunction under MCL 429.43 against defendant's further use of "Travis"-related marks. Defendant appealed.

The Court of Appeals *held*:

The trial court properly granted plaintiff's request for an injunction against defendant's use of "Travis"-related marks under MCL 429.43. Because plaintiff's "TRAVIS" mark was registered, the burden was on defendant to show that the mark was invalid, which it failed to do, and plaintiff showed that it had priority in the mark, that defendant's marks confused consumers, and that defendant used the confusing mark in the sale or advertising of services rendered in Michigan. Although the trial court did not analyze the case in this manner, it reached the correct result.

Affirmed.

1. TRADEMARKS AND TRADE NAMES — STATUTES — INFRINGEMENT — INJUNCTIONS.

A plaintiff who brings a trademark infringement action under MCL 429.42 must demonstrate that (1) the mark that the plaintiff claims to hold is valid, in that the mark actually functions as a trademark, (2) the plaintiff used the mark before the defendant

and thus holds priority in the mark, (3) consumers are likely to confuse the defendant's mark with the plaintiff's mark, and (4) the defendant used the allegedly infringing mark.

2. TRADEMARKS AND TRADE NAMES — REGISTRATION OF TRADEMARK — EVIDENCE OF VALIDITY.

In a trademark infringement action under MCL 429.42, the fact that the trademark was registered under MCL 429.34 is prima facie evidence that the mark is valid.

3. TRADEMARKS AND TRADE NAMES — REGISTRATION OF SURNAME AS TRADEMARK — EVIDENCE OF VALIDITY — SECONDARY MEANING — BURDEN OF PROOF.

In a trademark infringement action under MCL 429.42 to enjoin the use of a surname that the plaintiff has registered as a mark, the burden is on the defendant to show that the mark has failed to acquire secondary meaning and is therefore invalid.

*Aidenbaum Schloff and Bloom PLLC* (by *Jay M. Schloff*) for plaintiff.

*Anthony Della Pelle* for defendant.

Before: WILDER, P.J., and SAAD and K. F. KELLY, JJ.

SAAD, J. Defendant appeals the trial court's order that denied its motion for summary disposition and granted plaintiff's request for a permanent injunction. For the reasons stated below, we affirm.

### I. NATURE OF THE CASE

This action is a trademark-infringement suit. Michigan courts have protected trademark rights since the nineteenth century, initially under the common law of unfair competition. Michigan law has offered this protection for the benefit of two related groups: business owners, and the consuming public. Business owners, who invest significant amounts of money and effort to convince consumers to identify their marks with their products and services, needed a remedy against com-

petitors who sought to free ride on this accumulated goodwill by copying or pirating already established marks.[1] Consumers, who associated and expected a certain level of service and quality with certain marks, needed protection from imposters who copied or pirated already established marks to "pass off" their goods and services as those of the business associated with the marks.[2] For this reason, trademark law has always involved the advancement of two distinct but related interests: the private right of the trademark holder to prevent others from using its mark to pass off their goods or services as its own, and the public right to protection from this deceptive practice.[3]

Accordingly, Michigan courts have defined a "trademark" as any "peculiar . . . device" or symbol used by a manufacturer or service provider to distinguish its goods or services from those of others.[4] And courts protected a manufacturer or service provider's exclusive right to use a trademark "to protect [its] good will against the sale of another's product as [its own]" and "to prevent confusion of the public regarding the origin of goods of competing vendors."[5]

These interests inform the nature of plaintiff's action and the necessary proofs to protect its trademark. In actions for trademark infringement, courts require a plaintiff to show that (1) its mark was valid (i.e., was being used in the market and was "distinctive," in that consumers associated the mark at issue with plaintiff's

[1] See Restatement Unfair Competition, 3d, § 9, comment *c*, pp 77-78; and comment *d*, pp 79-81.

[2] *Id.*

[3] *Shakespeare Co v Lippman's Tool Shop Sporting Goods Co*, 334 Mich 109, 113-114; 54 NW2d 268 (1952).

[4] *Smith v Imus*, 57 Mich 456, 474; 24 NW 830 (1885).

[5] *Shakespeare Co*, 334 Mich at 113.

business), (2) plaintiff had priority in the mark (i.e., had used it before defendant), (3) defendant's allegedly infringing mark was likely to confuse consumers as to the source of defendant's products or services, and (4) defendant used the allegedly infringing mark.[6] Through these requirements, courts ensure that only words, devices, and symbols that function as trademarks—that is, those that consumers actually identify with a certain business owner's products or services—receive legal protection.[7] Those words, devices, and symbols that consumers do not identify with a particular business owner's products or services are left unprotected, so that new competitors and entrepreneurs could use these brand and trade names to fairly describe their products and services.

As American business became more sophisticated and new technologies enabled marketing and branding to take place at a national level, several states and the federal government codified the common law of trademarks. These statutes generally retain the common-law doctrines and principles on which they were based, and do not ordinarily disturb or eliminate the common law of trademarks as a remedy,[8] but they also create registration schemes for trademarks for better organization and ease of dispute resolution in the courts.[9] And, consistent with the national trend toward codifying trademark law, the Michigan Legislature enacted the Trademark Act ("the Act") in 1970, MCL 429.31 *et seq.*, and it is this statute that concerns our Court today.

In this case, plaintiff owns a restaurant and has used a surname, "Travis," as a mark in connection with the

---

[6] See, generally, Restatement Unfair Competition, 3d, § 9, comment *g*, pp 82-83, and § 20, p 208.

[7] See *id.*, comment *d*, p 80.

[8] *Id.*, comment *e*, p 81.

[9] *Id.*

food-service industry since the 1940s. It registered the "TRAVIS"[10] mark with the state in 1996 under MCL 429.34. This dispute arose in 2011, when defendant began to operate a restaurant called "Travis Grill" in the same geographical area as plaintiff's restaurant and licensees. Plaintiff sued defendant for trademark infringement under MCL 429.42 in Macomb Circuit Court, and the court granted an injunction under MCL 429.43 against defendant's further use of "Travis"-related marks. Defendant appealed its loss in our Court, and argues that the injunction should be reversed because plaintiff's trademark is not valid.

As at common law, a plaintiff who alleges trademark infringement under MCL 429.42 must show: (1) its mark is valid, (2) it has priority in the mark, (3) it is likely consumers will confuse defendant's mark with its own, and (4) defendant used the allegedly infringing mark. Because multiple individuals can possess the same surname, and thus might need use of the surname in a business capacity, Michigan courts generally do not give legal protections to surnames used as marks.[11] However, if a surname-mark acquires "secondary meaning"—i.e., if the consuming public comes to associate the mark with "the product of some particular person or factory or business" (for example, "McDonald's")—the surname-mark may be entitled to protection under MCL 429.42.[12] As noted, the burden of showing a mark's validity usually falls on the plaintiff, but if the plaintiff registers its mark under the Act,

---

[10] The mark's registration is in all capital letters, but this distinction is insignificant in this case.

[11] *Buscemi's Inc v Anthony Buscemi Delicatessen & Party Store, Inc*, 96 Mich App 714, 717; 294 NW2d 218 (1980). See also MCL 429.32(d) and (e).

[12] *Buscemi's*, 96 Mich App at 717; MCL 429.32(e).

then the burden shifts to the defendant to demonstrate that the plaintiff's surname-mark is not valid.

In this case, plaintiff's mark was registered, and, therefore, defendant has the burden of showing that plaintiff has either not used the "Travis" mark or that it is not distinctive because it lacks secondary meaning to consumers.

Because defendant provides no convincing evidence that plaintiff's mark is not valid, and because plaintiff offers the remaining evidence necessary to show infringement under MCL 429.42, we reject defendant's appeal and affirm the order of the trial court.

## II. FACTS AND PROCEDURAL HISTORY

This dispute involves marks used in connection with the promotion of plaintiff and defendant's respective restaurant and food-service businesses. Plaintiff and its predecessors have used the mark "TRAVIS" in connection with the advertising and operation of various family-owned restaurants since 1944. Plaintiff registered the mark with the state in 1996, and the registration remains valid through 2016. In 2011, defendant bought a restaurant licensed to use plaintiff's "TRAVIS" mark, but defendant purchased only the restaurant—it did not negotiate with plaintiff to retain the license to use the "TRAVIS" mark. It is unclear whether defendant checked with the Michigan trademark office before or at the time it purchased its restaurant, as defendant could have easily discovered plaintiff's registration of the "TRAVIS" mark in connection with the restaurant industry. Instead, defendant filed a certificate of assumed name with the state, changed the name of the restaurant from "Travis of Chesterfield" to "Travis Grill," and used the latter

name on its menus and advertising.[13] It also advertised a "famous Travis burger" on its menu, with the implicit admission that the "Travis" name has identifiable value in the restaurant business.

After plaintiff discovered defendant's use of the "Travis Grill" and "famous Travis burger" marks, it filed suit against defendant for trademark infringement under MCL 429.42. Specifically, it alleged that its "TRAVIS" mark was distinctive and possessed secondary meaning to consumers, and that defendant's use of the "Travis Grill" and "famous Travis burger" marks thus confused consumers, who would wrongly believe that defendant's restaurant was owned, operated, licensed, or otherwise affiliated with plaintiff. In addition to evidence of its registration and longstanding use of the "TRAVIS" mark, plaintiff also submitted affidavits from consumers, which stated that they believed defendant's restaurant was affiliated in some way with plaintiff's. Plaintiff asked the trial court to enjoin defendant's use of the "TRAVIS"-related marks.

Defendant responded with a motion for summary disposition, and claimed that the plain language of MCL 429.42 allowed a distinction between use of plaintiff's admittedly protected "TRAVIS" mark and defendant's "Travis Grill."[14] It also argued that the "TRAVIS" mark had not acquired "secondary meaning," and thus did not constitute a valid trademark under MCL 429.31 *et seq.*

---

[13] Defendant uses alternative spellings of the word "Grill" and "Grille," in its advertising, menus, and business name, apparently interchangeably.

[14] Defendant also erroneously claimed that it obtained a contractual right to use the name "Travis Restaurant Chesterfield—Gratiot" from the prior owner. However, it has abandoned this "contractual" argument on appeal, and we therefore do not address it in our opinion.

In February 2013, the trial court correctly held that the "TRAVIS" mark had acquired secondary meaning and was thus a valid trademark under MCL 429.31 *et seq*. It accordingly denied defendant's motion for summary disposition and granted plaintiff's request for a permanent injunction against defendant's use of the marks, a decision we affirm.

### III. STANDARD OF REVIEW

#### A. SUMMARY DISPOSITION

A trial court's decision on a motion for summary disposition is reviewed de novo. *Johnson v Recca*, 492 Mich 169, 173; 821 NWd 520 (2012). If the trial court does not specify under which specific subrule it granted or denied a motion for summary disposition, and it considered material outside the pleadings, we review the decision under MCR 2.116(C)(10). *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). "This Court reviews the motion by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Auto Club Group Ins Ass'n v Andrzejewski*, 292 Mich App 565, 569; 808 NW2d 537 (2011).

Summary disposition "is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *McCoig Materials, LLC v Galui Const, Inc*, 295 Mich App 684, 693; 818 NW2d 410 (2012). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an

issue upon which reasonable minds could differ." *Bronson Methodist Hosp v Auto-Owners Ins Co*, 295 Mich App 431, 441; 814 NW2d 670 (2012).

B. INJUNCTIONS

MCL 429.43 explicitly states that "[a]ny owner of a mark registered under [MCL 429.31 *et seq.*] may proceed by suit to enjoin" defendant's infringement. MCL 429.43(1). A trial court's decision to grant or deny injunctive relief is reviewed for an abuse of discretion. *Wiggins v City of Burton*, 291 Mich App 532, 558-559; 805 NW2d 517 (2011) (citations omitted). Injunctive relief is an extraordinary remedy that issues only when justice requires, there is no adequate remedy at law, and there is a real and imminent danger of irreparable injury. *Id.* The decision to grant injunctive relief must be tailored to the facts of the particular case. *Soergel v Preston*, 141 Mich App 585, 590; 367 NW2d 366 (1985).

Our Court weighs the following factors when it determines whether the trial court properly issued a permanent injunction:

> (a) the nature of the interest to be protected, (b) the relative adequacy to the plaintiff of injunction and of other remedies, (c) any unreasonable delay by the plaintiff in bringing suit, (d) any related misconduct on the part of the plaintiff, (e) the relative hardship likely to result to defendant if an injunction is granted and to plaintiff if it is denied, (f) the interests of third persons and of the public, and (g) the practicability of framing and enforcing the order or judgment. [*Wayne Co Employees Retirement Sys v Wayne Co*, 301 Mich App 1, 28; 836 NW2d 279 (2013), lv gtd 495 Mich 983 (2014) (citation and quotation marks omitted).]

Courts balance the benefit of an injunction to a requesting plaintiff against the damage and inconve-

nience to the defendant, and will grant an injunction if doing so is most consistent with justice and equity. *Wayne Co Retirement Sys*, 301 Mich App at 28-29.

### C. THE TRADEMARK ACT

Matters of statutory interpretation are reviewed de novo. *People v Lewis*, 302 Mich App 338, 341; 839 NW2d 37 (2013). When a court interprets a statute, it seeks to ascertain and implement the intent of the Legislature. *Huron Mountain Club v Marquette Co Road Comm*, 303 Mich App 312, 323; 845 NW2d 523 (2013). The Legislature's intent is best expressed through the plain meaning of the statute's language. *Ter Beek v City of Wyoming*, 495 Mich 1, 8; 846 NW2d 531 (2014).

The Trademark Act is based on the common law, and it is therefore appropriate, when interpreting the statute, to consider federal and state cases that apply the common law of trademark. See MCL 429.44 (stating that "[n]othing contained in this act shall adversely affect the rights or the enforcement of rights in marks acquired in good faith at any time at common law") and *Ed Subscription Servs, Inc v American Ed Servs, Inc*, 115 Mich App 413; 320 NW2d 684 (1982) (entertaining a corporate-name dispute brought at common law after passage of Trademark Act). It is also "appropriate to look to federal case law when interpreting a state statute which parallels its federal counterpart,"[15] as it appears the Michigan Trademark Act does the federal Lanham Act.[16] See *Leelanau Wine Cellars, Ltd v Black*

---

[15] *State Employees Ass'n v Dep't of Mgt and Budget*, 428 Mich 104, 117; 404 NW2d 606 (1987).

[16] It is unclear whether the Legislature intended the Trademark Act to be a direct copy of the Lanham Act, but it was enacted after the Lanham Act, and its structure and language clearly parallel the initial version of the Lanham Act. Congress passed the Lanham Act in 1948; the Legisla-

*& Red, Inc*, 502 F3d 504, 521 (CA 6, 2007) (holding that Michigan statutory and common law uses the same likelihood-of-confusion test for trademark infringement as under federal law); and *Goscicki v Custom Brass & Copper Specialties, Inc*, 229 F Supp 2d 743, 756 (ED Mich, 2002) (ruling that Michigan common law uses "the same . . . tests for federal trademark infringement and federal unfair competition").

## IV. ANALYSIS

### A. TRADEMARK INFRINGEMENT UNDER MCL 429.42

In Michigan, there are three sources of trademark law: common law, the state Trademark Act, and the federal Lanham Act. A plaintiff may bring separate trademark-related claims under each body of law. This case is brought under Michigan's Trademark Act, which is codified at MCL 429.31 *et seq*. The Act states that a "mark" is "any trademark or service mark,"[17] and defines "trademark" as "any word, name, symbol, or device, or any combination thereof, other than a trade name in its entirety, adopted and used by a person to identify goods made or sold by him or her and to distinguish them from similar goods made or sold by others." MCL 429.31(a).

The Act details a system of registration for trademarks, and also creates a remedy for holders of Michigan trademarks that have been infringed. Specifically, MCL 429.42 states that "any person who shall"

---

ture passed the Trademark Act in 1970. The Trademark Act's structure and much of its language bear a striking resemblance to the Model State Trademark Bill, which is patterned after the Lanham Act. 3 McCarthy, Trademarks and Unfair Competition, § 22.7; see also *id*. at § 22.5 (observing that the Model Bill is used in all states except West Virginia, Hawaii, Wisconsin, and New Mexico).

[17] MCL 429.31(f).

(a) Use, without the consent of the registrant, any reproduction, counterfeit, copy or colorable imitation of a mark registered under this act in connection with the sale, offering for sale, or advertising of any goods or services on or in connection with which such use is likely to cause confusion or mistake or to deceive as to the source of origin of such goods or services; or

(b) Reproduce, counterfeit, copy or colorably imitate any such registered mark and apply such reproduction, counterfeit, copy or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used upon or in connection with the sale or other distribution in this state of such goods or services; is liable to a civil action by the owner of the registered mark for any or all of the remedies provided in [MCL 429.43] . . . .

MCL 429.43 also states that "[a]ny owner of a mark registered under this act" may bring suit against a trademark infringer, and that the plaintiff may ask a court to "enjoin the manufacture, use, display or sale of any counterfeits or imitations" of its mark by the defendant. MCL 429.43(1).

As mentioned earlier, trademark law thus advances two interests—the private right of the trademark holder to prevent others from using his mark to reap monetary reward, and the public right to protection from deceptive practices—and seeks to align those interests so that the private trademark holder will pursue infringers, thereby protecting the broader public from fraudulent trade practices. See *Hanover Star Milling Co v Metcalf*, 240 US 403, 412-413; 36 S Ct 357; 60 L Ed 713 (1916), and *Shakespeare Co*, 334 Mich at 113.

Accordingly, a plaintiff who brings a trademark-infringement suit under MCL 429.42 must demonstrate that (1) the mark the plaintiff claims to hold is valid, in

that it actually functions as a trademark,[18] (2) the plaintiff holds priority in the mark, i.e., the plaintiff used the mark before the defendant,[19] (3) consumers are likely to confuse the defendant's mark with the plaintiff's mark,[20] and (4) the defendant used the allegedly infringing mark.[21] As noted earlier, if the mark is registered with the state, the registration is prima facie evidence that the plaintiff's mark is valid, and the burden of production shifts to the defendant to demonstrate that the mark is not valid. MCL 429.34(3).[22] If these four elements are established, any court "of competent jurisdiction" may issue an injunction to "restrain" the defendant from "[the] manufacture, use, display or sale" of "any counter-

---

[18] See *Boron Oil Co v Callanan*, 50 Mich App 580, 583; 213 NW2d 836 (1973).

[19] *United Drug Co v Theodore Rectanus Co*, 248 US 90, 100; 39 S Ct 48; 63 L Ed 141 (1918); *Interstate Brands Corp v Way Baking Co*, 403 Mich 479, 481; 270 NW2d 103 (1978); MCL 429.31(a) and (h); and MCL 429.42(a).

[20] *Boron Oil Co*, 50 Mich App at 584.

[21] MCL 429.42(a).

[22] See also the corresponding provision of the Lanham Act, 15 USC 1057(b), which states that

[a] certificate of registration of a mark ... shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate, subject to any conditions or limitations stated in the certificate.

Federal courts have interpreted this provision to mean that registration of a mark relieves the mark holder of the burden of proving validity and secondary meaning and "shifts the burden of proof to the contesting party, who must introduce sufficient evidence to rebut the presumption of the holder's right to protected use." *Qualitex Co v Jacobson Prod Co, Inc*, 13 F3d 1297, 1301 (CA 9, 1994), rev'd on other grounds 514 US 159 (1995).

feits or imitations" of the plaintiff's marked goods or services. MCL 429.43(1). We address each issue in turn.

### B. VALIDITY

#### 1. LEGAL PRINCIPLES

Under the Trademark Act and at common law, trademarks only receive legal protection when they are (1) used in connection with the sale and advertising of products or services, and (2) distinctive, in that consumers understand the mark to designate goods or services as the "product of a particular manufacturer or trader." *Shakespeare Co*, 334 Mich at 113. In other words, a "distinctive" mark serves as a source identifier to consumers. *Wal-Mart Stores, Inc v Samara Bros, Inc*, 529 US 205, 212; 120 S Ct 1339; 146 L Ed 2d 182 (2000).

"The right to a trademark grows out of its use, and covers the area in which it is used." *Interstate Brands Corp v Way Baking Co*, 403 Mich 479, 481; 270 NW2d 103 (1978). In Michigan, a mark is used when it is

> placed in any manner on the goods or their containers or on the tags or labels affixed thereto and such goods are sold or otherwise distributed in this state, and on services when it is used or displayed in this state in the sale or advertising of services and the services are rendered in this state. [MCL 429.31(h).][23]

---

[23] This commonsense interpretation of "used" is consistent with (and clearer than) the Lanham Act's requirement that a mark be "use[d] in commerce," meaning that a mark must be used when the goods are sold or transported in commerce—i.e., in the ordinary course of trade—to be a valid trademark. 15 USC 1127. See also *Central Mfg, Inc v Brett*, 492 F3d 876, 882-883 (CA 7, 2007) (holding that manufacturer did not have trademark on mark "Stealth" for baseballs when it could not show that it had ever sold any baseballs under that mark).

Courts assess a mark's distinctiveness using the "now-classic test"[24] formulated by Judge Henry Friendly in *Abercrombie & Fitch Co v Hunting World, Inc*, 537 F2d 4 (CA 2, 1976). Drawing on the common law of trademark to assess a mark's validity under the Lanham Act, Judge Friendly identified a taxonomy of marks that courts had used to determine whether a mark was "distinctive" and thus eligible for trademark protections. *Abercrombie*, 537 F2d at 9. Under the classification scheme, there are four types of marks: "(1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful." *Id*. "Arbitrary or fanciful"[25] and "suggestive"[26] marks are "inherently distinctive," in that they "distinguish a good as coming from a particular source." *Abercrombie & Fitch Stores, Inc v American Eagle Outfitters, Inc*, 280 F3d 619, 635-636 (CA 6,

---

[24] *Wal-Mart*, 529 US at 210.

[25] In plain English, an "arbitrary" mark takes a word that is already in common usage and applies it to a product or service that has nothing to do with its ordinary meaning. See *Abercrombie*, 537 F2d at 11 n 12. An arbitrary mark is thus mismatched to a particular product or service, because its commonplace meaning has no relationship with that product or service. Examples include "Ivory" soap and "Lucky Strike" cigarettes. *Abercrombie*, 537 F2d at 9 n 6; *American Eagle*, 280 F3d at 635.

A "fanciful" mark is a coined term that has no commonplace meaning whatsoever, and is "completely fabricated by the trademark holder[]." *Kellogg Co v Toucan Golf, Inc*, 337 F3d 616, 624 (CA 6, 2003). Examples include "Kodak" film, "Exxon" oil, and "Clorox" bleach. *Id*.; *Exxon Corp v XOIL Energy Resources, Inc*, 552 F Supp 1008, 1014 (SD NY, 1981); *Clorox Chem Co v Chlorit Mfg Corp*, 25 F Supp 702, 705 (ED NY, 1938).

[26] "Suggestive" marks are somewhat descriptive and only indirectly convey an impression of the goods or services on offer. " 'A term is suggestive if it requires imagination, thought and perception to reach a conclusion as to the nature of goods.' " *Abercrombie*, 537 F2d at 11 (citation omitted). Examples include "Tide" laundry detergent, "Citibank" bank, or "Snuggle" fabric softener. *American Eagle*, 280 F3d at 635; *Citibank, NA v Citibanc Group, Inc*, 724 F2d 1540, 1547 (CA 11, 1984); *Lever Bros Co v Mattel, Inc*, 609 F Supp 1395, 1400 (SD NY, 1985).

2002). Accordingly, arbitrary or fanciful and suggestive marks are considered valid trademarks for the purposes of trademark law. *Id*.

By contrast, "descriptive ('Soft Soap') or generic ('soap') terms do not inherently distinguish a good as coming from a particular source," and therefore may not generally serve as trademarks. *American Eagle*, 280 F3d at 635. Generic marks "refer[], or [have] come to be understood as referring, to the genus of which the particular product is a species." *Abercrombie*, 537 F2d at 9.[27] In other words, a generic term is one that is commonly used as the name or description of a class of goods. As such, generic terms are unable to function as a source identifier to consumers and can never serve as trademarks.

Likewise, marks that are "merely descriptive"[28] cannot serve as trademarks, MCL 429.32(e), because they are unable to distinguish a good as originating from a particular source. Moreover, because descriptive marks simply describe a product or service, trademark law

---

[27] Generic terms can thus be synonymous with the good or service itself ("apple" is generic when used by an apple orchard) or may describe a broader category to which the particular good or service belongs ("fruit" is also generic when used by an apple orchard). See also *Kellogg Co v Nat'l Biscuit Co*, 305 US 111, 116-117; 59 S Ct 109; 83 L Ed 73 (1938) (Brandeis, J.) (holding the mark "shredded wheat" to be generic because it "is the term by which the biscuit in pillow-shaped form is generally known by the public"). Other examples of a generic mark would include "cola," "cereal," and "toothpaste." Note that a term that is otherwise generic ("apple" for an apple orchard) can be arbitrary if used in a different context ("apple" for a computer company). See *Abercrombie*, 537 F2d at 9 n 6 (" 'Ivory' would be generic when used to describe a product made from the tusks of elephants but arbitrary as applied to soap.").

[28] Descriptive marks describe a particular characteristic quality, or function, "of the product in a way that does not require any exercise of the imagination." *George & Co LLC v Imagination Entertainment Ltd*, 575 F3d 383, 394 (CA 4, 2009). Examples of a descriptive mark include "After Tan" post-tanning lotion and "5 Minute glue." *Id*.

refuses to grant a monopoly on the descriptive mark to the manufacturer or service provider—those descriptive words must remain available to competitors to describe their products and services. Surnames that are used as marks are classified as descriptive marks for both reasons: they merely describe the mark user's identity, and they interfere with the right of other business owners with the same surname to use that surname to advertise their products and services. *Buscemi's Inc v Anthony Buscemi Delicatessen & Party Store, Inc*, 96 Mich App 714, 717; 294 NW2d 218 (1980). See also MCL 429.32(d) and (e).

Descriptive marks differ from generic marks in one crucial respect, however: it is possible for descriptive marks to become source identifiers, and thus valid trademarks. A descriptive mark gains source-identifying capacity when it acquires "secondary meaning," which occurs when a descriptive mark has "become associated in the minds of purchasers or customers with the source or origin of goods or services rather than with the goods or services themselves." *Burke v Dawn Donut Sys, Inc*, 147 Mich App 42, 46; 383 NW2d 98 (1985) (citations and quotation marks omitted). Like other descriptive marks, a surname-mark can become a valid trademark if it acquires secondary meaning. *Buscemi's*, 96 Mich App at 717. To determine whether a plaintiff's mark has acquired secondary meaning, a court considers the "length of use of the symbol or mark, nature and extent of popularizing and advertising the symbol, and the efforts expended by plaintiff in promoting the connection in the minds of the general public of his mark or symbol with a particular product." *Boron Oil Co*, 50 Mich App at 583-584.[29]

---

[29] See *Wolf Appliance, Inc v Viking Range Corp*, 686 F Supp 2d 878, 887 (WD Wis, 2010), for a more recent summation of the factors federal

## 2. APPLICATION

In this case, plaintiff registered its mark "TRAVIS" in connection with the restaurant and food-service industry in 1996, and the registration remains good through 2016. Plaintiff's registration serves as prima facie evidence that the mark is valid, and the burden of production thus shifts to defendant to show that it is not. MCL 429.34(3). Defendant notes that plaintiff's mark is a surname, and therefore must acquire secondary meaning to be a valid trademark—something defendant asserts the mark has not done. It also claims that plaintiff's evidence of secondary meaning is not actual evidence of secondary meaning. Defendant accordingly asks us to reverse the trial court's decision, which held that the "TRAVIS" mark possessed secondary meaning and was a valid trademark.

Defendant correctly identifies plaintiff's mark as a surname and argues that, because surname-marks are descriptive, "TRAVIS" must possess secondary meaning to be a valid trademark. *Buscemi's*, 96 Mich App at 717. However, as noted, because plaintiff's mark is registered, it is defendant's burden to show that "TRAVIS" lacks secondary meaning, which defendant fails to do. MCL 429.34(3). Instead of introducing such evidence, defendant inexplicably emphasizes the totally irrelevant fact that plaintiff does not provide food products to its business. This assertion, while it may be literally true—in that plaintiff is not the actual source of the food products defendant sells—has nothing to do with secondary meaning, which is rooted in consumer

courts consider when assessing whether a product has acquired secondary meaning (listing the factors as "(1) direct consumer testimony and consumer surveys; (2) exclusivity, length and manner of use; (3) amount and manner of advertising; (4) amount of sales and number of customers; (5) established place in the market; and (6) proof of intentional copying").

*perception*: here, the perception (encouraged by defendant's use of the "Travis Grill" and "famous Travis burger" marks) that plaintiff is associated in some way with defendant's business.

And, though plaintiff was not required to prove validity under the statute, it nonetheless gave evidence that its mark possessed secondary meaning, in the form of (1) the 60-year span over which plaintiff or its predecessors have used the "TRAVIS" mark in the restaurant business, (2) defendant's use of the "famous Travis burger" on its menu, the same wording plaintiff's licensee uses (and has used) to describe its hamburger, and (3) affidavits from customers who patronized defendant's restaurant and believed it to be operated by or under the authority of plaintiff. As noted, a plaintiff can show the existence of secondary meaning through the "length of use of the symbol or mark" and "direct consumer testimony and consumer surveys." *Boron Oil Co*, 50 Mich App at 583; *Wolf Appliance*, 686 F Supp 2d at 887.

Because defendant has not shown that plaintiff's mark lacked secondary meaning, it has failed to show that plaintiff's mark is invalid under the Trademark Act, and we affirm the trial court's holding that plaintiff's mark is valid.

### C. PRIORITY

"Trademark rights arise out of appropriation and use. Generally, the right belongs to one who first appropriates and uses the mark." *Interstate Brands Corp v Way Baking Co*, 79 Mich App 551, 555; 261 NW2d 84 (1977), rev'd on other grounds 403 Mich 479. In this case, it is undisputed that plaintiff used the mark in commerce earlier than defendant: plaintiff's predecessors have used the "TRAVIS" mark in connec-

tion with restaurants since 1944, and defendants do not claim they used the "Travis Grill" or "famous Travis burger" marks before that date. Plaintiff thus has priority in the "TRAVIS" mark.

### D. LIKELIHOOD OF CONFUSION

After a trademark-infringement plaintiff demonstrates that its mark is valid (or, as here, the defendant fails to demonstrate that the plaintiff's mark is invalid) and possesses priority over the defendant's mark, the plaintiff must show that the defendant's mark is so similar to its own that it is likely to create confusion among consumers as to the source of defendant's goods or services. MCL 429.42(a); *Boron Oil Co*, 50 Mich App at 584. "Actual confusion of customers, clients, or the public at large does not need to be shown; it is sufficient if the acts of the defendant indicate that probable confusion will occur." *Boron Oil Co*, 50 Mich App at 584; see also *220 Bagley Corp v Julius Freud Land Co*, 317 Mich 470, 475; 27 NW2d 59 (1947).

Courts assess the likelihood of confusion by considering the particular facts of each case. *Boron Oil Co*, 50 Mich App at 584. Prior factors courts have found relevant when assessing the likelihood of confusion include the (1) strength of the plaintiff's mark, (2) relatedness of the plaintiff's and the defendant's services, (3) similarity of the marks, (4) evidence of actual confusion, (5) marketing channels used, (6) likely degree of customer's care and sophistication, (7) intent of the defendant in selecting the mark, and (8) likelihood of expansion of the product lines using the marks. *Homeowners Group, Inc, v Home Mktg Specialists, Inc*, 931 F2d 1100, 1106 (CA 6, 1991). This list of factors is "not exhaustive," as "any factor that is likely to influence the impression conveyed to prospective purchas-

ers" by the use of a mark is relevant when assessing the likelihood of confusion. Restatement Unfair Competition, 3d, § 21, comment *a*, p 227. Nor should the list of factors be applied as a rote test, with plaintiff required to show each factor listed above to prevail—the factors "are simply a guide to help determine whether confusion is likely. . . . Each case presents its own complex set of circumstances and not all of these factors may be particularly helpful in any given case." *Id*. at 1107. "The ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Id*.

To analyze the strength of a mark, a court " 'focuses on the distinctiveness of a mark and its recognition among the public.' " *Express Welding, Inc v Superior Trailers, LLC*, 700 F Supp 2d 789, 797 (ED Mich, 2010) (citation omitted). Plaintiff's mark "TRAVIS" is descriptive and has acquired secondary meaning. It is accordingly not as strong as an "arbitrary or fanciful" or "suggestive" mark,[30] yet the consumer affidavits and the length of the mark's use suggest that it is widely recognized in Macomb County. The name of defendant's

---

[30] As explained earlier, "arbitrary or fanciful" and "suggestive" marks are inherently distinctive, in that they "distinguish a good as coming from a particular source." *American Eagle Outfitters, Inc*, 280 F3d at 635-636. If they acquire public recognition, arbitrary or fanciful and suggestive marks are thus the strongest type of mark because they function as ready-made designators of the good or service's origin. Descriptive marks that have acquired secondary meaning are usually weaker by comparison, because a descriptive mark begins as a term that describes the product or service on offer, and thus does not function as a ready-made designator of the good or service's origin. Of course, a descriptive mark with secondary meaning can acquire great strength over time—for example, "McDonald's" restaurants. See *Quality Inns Int'l, Inc v McDonald's Corp*, 695 F Supp 198, 211-212 (D Md, 1988). "Travis" and the "famous Travis burger," however, are hardly as widely recognized among consumers as "McDonald's" and the "Big Mac."

restaurant, "Travis Grill," is almost identical to plaintiff's mark. See *Ed Subscription Serv, Inc*, 115 Mich App at 421 (stating that "[c]orporate names are confusingly similar when the first two words of a compound name are identical and in the same sequence"). In what amounts to a telling admission, defendant again used an almost identical mark to plaintiff's mark—"the famous Travis Burger"—on its menu to advertise its food products. And plaintiff, through its customer affidavits, also introduced evidence that defendant's mark actually confused consumers, who believed that defendant was owned, operated, licensed, or otherwise affiliated with plaintiff in some way.

When these factors are weighed against defendant's mere unsupported statement that no likelihood of confusion exists,[31] it is apparent that plaintiff has shown that a likelihood of confusion (and, indeed, actual confusion) exists with respect to its mark and defendant's.

### E. DEFENDANT'S USE OF THE INFRINGING MARK

To be liable for infringement, a defendant must "use" the allegedly infringing mark. MCL 429.42(a). As noted, a mark is "used" under the Trademark Act when

> it is placed in any manner on the goods or their containers or on the tags or labels affixed thereto and such goods are sold or otherwise distributed in this state, and on services when it is used or displayed in this state in the sale or advertising of services and the services are rendered in this state. [MCL 429.31(h).]

---

[31] "A party may not merely announce a position and leave it to this Court to discover and rationalize the basis for the claim." *National Waterworks, Inc v Int'l Fidelity & Surety, Ltd*, 275 Mich App 256, 265; 739 NW2d 121 (2007).

In this case, it is undisputed that defendant used the marks "Travis Grill" and "famous Travis burger" "in the sale or advertising of services" that were "rendered" in the state of Michigan. Defendant has thus used the allegedly infringing mark under MCL 429.42(a).

## V. CONCLUSION

The trial court properly granted plaintiff's request for an injunction against defendant's use of the "Travis Grill" and "famous Travis burger" marks under MCL 429.43 because defendant failed to show that plaintiff's "TRAVIS" mark was invalid, and plaintiff showed that (1) it had priority in the trademark, (2) defendant's marks confused consumers and suggested that defendant's business was associated with plaintiff, and (3) defendant used the confusing mark in the sale or advertising of services rendered in Michigan. Though the trial court did not analyze the case in the precise method outlined above, it reached the correct result,[32] and we accordingly affirm its order that granted plaintiff's request for an injunction. Plaintiff may tax costs as the prevailing party.

Affirmed.

WILDER, P.J., and K. F. KELLY, J., concurred with SAAD, J.

---

[32] "A trial court's ruling may be upheld on appeal where the right result issued, albeit for the wrong reason." *Gleason v Dep't of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003).