*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PROFESSIONAL PROPERTY MANAGEMENT
COMPANY OF MICHIGAN, doing business as
PROFESSIONAL PROPERTY MANAGEMENT
INC.,

UNPUBLISHED
August 18, 2022

Plaintiff-Appellant,

v

No. 358771
Wayne Circuit Court
LC No. 20-009064-CB

PROFESSIONAL PROPERTY MANAGEMENT
SERVICES LLC, doing business as
PROFESSIONAL PROPERTY MANAGEMENT,

Defendant-Appellee,

and

LANDON C. BAFFIELD, also known as LADON C.
BAFFIELD,

Defendant-Appellee.

Before: GADOLA, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

Plaintiff appeals as of right an order denying its motion for summary disposition, brought under MCR 2.116(C)(8) and (C)(10), and dismissing its complaint.[1] We affirm.

---

[1] A prior appeal was dismissed for failure to pursue the case in conformity with MCR 7.201(B)(3) and MCR 7.216(A)(10). *Professional Prop Mgt Co of Mich v Professional Prop Mgt Servs LLC*, unpublished order of the Court of Appeals, entered September 21, 2021 (Docket No. 358260).

-1-

## I. FACTUAL BACKGROUND

Plaintiff, Professional Property Management Company of Michigan, doing business as Professional Property Management, Inc., a manager and realtor of residential and commercial properties in Michigan, was formed in 1978 by George M. Nyman. Defendant, Landon C. Baffield, also known as Ladon C. Baffield, formed defendant, Professional Property Management Services, LLC, doing business as Professional Property Management, on January 19, 2017. One of plaintiff's related entities, Woodward Mack 22, LLC (Woodward), was denied a permit for a parking deck project by the city of Detroit. Plaintiff sent a letter to defendants asking them to cease and desist using the name Professional Property Management. Defendants refused. Plaintiff then filed a complaint against defendants seeking injunctive relief and damages based on claims of trademark infringement and unfair competition, contending that Woodward's permits had been denied because the city of Detroit was confusing plaintiff with defendants, who have nine outstanding blight violations. Plaintiff subsequently filed a motion for summary disposition under MCR 2.116(C)(8) and (C)(10), arguing that it was entitled to injunctive relief and damages because defendants adopted a name that was confusingly similar to plaintiff's name, which was actually causing confusion.

At a hearing on plaintiff's motion, the trial court first addressed plaintiff's motion under MCR 2.116(C)(8):

> [D]efendant[s] did file a well pled answer and they did contest that . . . their name is Professional Property Management Services, LLC and it's completely distinct, separate and distinguishable from the plaintiff's name, Professional Property Management Company of Michigan, doing business as Professional Property Management. Defendant [sic] claims it has not used the name of Professional Property Management and . . . pled that plaintiff has not satisfied the legal definition of a trademark. They also allege, in their answer, that they're not in competition . . . . So, it's denied, under . . . [MCR 2.116](C)(8).

Second, the trial court addressed plaintiff's motion under MCR 2.116(C)(10):

> [Plaintiff] did not register a trademark. They have a . . . company name that they have registered. As far as the relatedness of the services provided by the plaintiff and the defendant [sic], they are not direct competitors . . . . [W]hile they do own real estate, the plaintiff deals in commercial real estate, where [defendants'] business has been residential and leasing houses and they are not in competing markets. So, it necessarily wouldn't, you know, lead to confusion because they are direct competitors. As far as . . . the similarity[] between plaintiff[']s trade name and defendants['] name, . . . [w]hile these names may have the first three words as part of their title, they are distinguished by their entire title. And the next is the evidence of the actual confusion caused by defendant's [sic] infringing mark . . . . [P]laintiff offers that there was confusion with the city of Detroit, under one instance, in denying a permit due to blight violations by the defendant [sic] . . . but . . . the error seems to be on the city of Detroit's part and it is not . . . claimed that it's been done by any action of the defendant [sic], other than filing for a similar name. So, in looking at these various factors, it's very weak to show that there is a likelihood of confusion, . . . just because it happened once with the city of Detroit.

Going through all these other factors, doesn't mean there's a . . . very high likelihood of this happening. As far as the plaintiff showing that they would've been irreparably harmed if a temporary restraining order and injunction is not granted, they just argue that there would be the likelihood of this confusion based on this one incident and it would be irreparable harm but irreparable harm, this [is] not something that they are in a competitive market, that they are losing business. At most, plaintiff argues that it cost them money to straighten out this issue with the City, however, no evidence [has been] given as to costs or how they straightened it out. And, even if . . . that could be quantified . . . , it's not irreparable harm. As far as balancing the harm to the plaintiff and the defendant [sic] in this, plaintiff has not shown any extreme hardship if the injunction would not be issued. In fact, the one confusion with the city of Detroit has already been straightened out and there has been no other issues, where as the defendant [sic] has indicated that it would . . . cause them hardship to . . . change the name . . . . So, for those reasons and the reasons stated by the defendant [sic], the plaintiff has not shown that it is entitled to injunctive relief.

Regarding plaintiff's request for damages, the trial court concluded:

[T]he Court does not see a causation of the defendant's [sic] action that caused monetary damages, given that their name is distinctive and they're not in a competitive business . . . . And so, I am in agreement with defendant's [sic] request to deny the summary disposition and dismiss the complaint . . . .

The trial court entered an order denying plaintiff's motion for summary disposition under MCR 2.116(C)(8) and (C)(10) and, finding no legal basis for the complaint, dismissed the case. This appeal followed.

Plaintiff contends that the trial court erred in denying its motion for summary disposition because plaintiff and defendants are direct competitors and defendants use of plaintiff's tradename has caused actual confusion, resulting in plaintiff sustaining damages. Moreover, plaintiff argues, the trial court's dismissal of plaintiff's complaint was premature because plaintiff was not allowed to conduct discovery. We disagree with plaintiff's arguments.

II. ANALYSIS

A. STANDARD OF REVIEW

A trial court's decision to grant or deny a motion for summary disposition is reviewed de novo. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion for summary disposition brought under MCR 2.116(C)(8) tests the legal sufficiency of a claim based on the complaint's factual allegations to determine if the plaintiff has stated a claim on which relief may be granted. *Id*. at 159-160. A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). Such a motion may be granted when the documentary evidence submitted by the parties, viewed in the light most favorable to the nonmoving party, shows there is no genuine

issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.*; *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

## B. INJUNCTIVE RELIEF

"Injunctive relief may be granted where a business competitor has adopted a name which is confusingly similar to one already being used by another business and the similarity results in a likelihood or probability of confusion among consumers who are using ordinary care." *Benchmark Financial, Ltd v Mayer*, unpublished per curiam opinion of the Court of Appeals, issued February 2, 1999, (Docket No. 206087), at 2,[2] citing *Boron Oil Co v Callanan*, 50 Mich App 580, 584; 213 NW2d 836 (1973). Put another way, injunctive relief is appropriate in circumstances where there is "the assumption of a name already in use in the same or similar business in a particular locality, or a name so similar as to cause confusion[.]" *Taylor Supply Co v Saginaw Hardware Co*, 365 Mich 576, 585; 113 NW2d 872 (1962). Michigan courts consider a number of factors in determining whether there is a likelihood of confusion between two names, including:

> the (1) strength of the plaintiff's mark, (2) relatedness of the plaintiff's and the defendant's services, (3) similarity of the marks, (4) evidence of actual confusion, (5) marketing channels used, (6) likely degree of customer's care and sophistication, (7) intent of the defendant in selecting the mark, and (8) likelihood of expansion of the product lines using the marks. *Janet Travis, Inc v Preka Holdings, LLC*, 306 Mich App 266, 285; 856 NW2d 206 (2014).

"Actual confusion of customers, clients, or the public at large does not need to be shown; it is sufficient if the acts of the defendant indicate that probable confusion will occur." *Boron Oil Co*, 50 Mich App at 584. Whether the requisite confusion exists must be evaluated in light of the specific facts of each case. *Id*.

The trial court denied plaintiff's motion for summary disposition. Regarding MCR 2.116(C)(8), the trial court agreed with defendants' arguments that they were a separate entity from plaintiff, plaintiff had not satisfied the legal definition of trademark, and they were not in competition with plaintiff. Regarding MCR 2.116(C)(10), the trial court again noted that plaintiff had not registered a trademark. The trial court concluded that plaintiff and defendants were not direct competitors because plaintiff dealt in commercial real estate while defendants dealt with "residential and leasing houses." "As far as . . . the similarity[] between plaintiff[']s trade name and defendants['] name, . . . [w]hile these names may have the first three words as part of their title, they are distinguished by their entire title." And the issue plaintiff had with the city of Detroit, reasoned the trial court, was the result of a clerical error on the part of the city. Further, there was no evidence of irreparable harm to plaintiff given that the clerical issue had already been resolved. On the contrary, the trial court concluded, harm was more likely to be experienced by defendants' changing their name.

---

[2] In Michigan, unpublished cases are not legally binding but can be considered for their persuasive or instructive value. MCR 7.215(C)(1); *Kern v Kern-Koskela*, 320 Mich App 212, 241; 905 NW2d 453 (2017).

An examination of the relevant factors used by Michigan courts to determine whether there is a likelihood of confusion between two names leads us to conclude that the trial court did not err. First, the strength of the plaintiff's mark does not favor plaintiff's case, particularly in light of the fact that plaintiff does not appear to have an actual trademark. Under the Michigan Trademarks and Service Marks Act, MCL 429.31 *et seq*., a trademark is "any word, name, symbol, or device, or any combination thereof, other than a trade name in its entirety, adopted and used by a person to identify goods made or sold by him or her and to distinguish them from similar goods made or sold by others." MCL 429.31(a). "Under the Trademark Act and at common law, trademarks only receive legal protection when they are (1) used in connection with the sale and advertising of products or services, and (2) distinctive, in that consumers understand the mark to designate goods or services as the product of a particular manufacturer or trader." *Janet Travis, Inc*, 306 Mich App at 279 (internal quotation marks and citation omitted). A party desiring to obtain a legally valid trademark may file an application for registration of a trademark. MCL 429.33 (1) through (5). As the trial court noted, there is no evidence in this case that plaintiff filed an application for registration of a trademark. Therefore, the first factor weighs in defendants' favor.

The second factor inquires as to the relatedness of plaintiff's and defendants' services. While it is true that plaintiff and defendants both deal in the residential real estate market, plaintiff's business is much more expansive and deals additionally in the commercial real estate market, which defendants do not. Indeed, defendants presented evidence that defendant Baffield only formed an LLC to avoid personal liability on the 34 rental properties he individually owns and manages. By comparison, plaintiff has been working in both the residential and commercial real estate markets for years and has extensive holdings in those areas. Therefore, as the trial court concluded, there is not a significant likelihood of confusion because the two parties are not direct competitors.

The third factor considers the similarity of the names in question. While similar, the names are distinct; they involve some of the same words, but also several different words. Professional Property Management Company of Michigan is noticeably different from Professional Property Management Services, LLC. This point is particularly salient given the evidence presented by defendants that there are multiple entities in Michigan with names similar to plaintiff's name.

Fourth is the evidence of actual confusion. As noted above, there is a low likelihood of confusion because the two parties are not direct competitors. Plaintiff cites only one instance in which the parties' names were mixed up, and we agree with the trial court that the instance in question was due to a clerical error, i.e., mistake—not actual confusion—on the city of Detroit's part that was subsequently resolved. None of the evidence presented suggests the occurrence of a second instance of confusion or even conduct suggesting the likelihood of confusion. This consideration also applies to the seventh factor, which inquires as to the intent of defendants in selecting the mark. Simply put, there is no evidence defendants chose their name with any intent to infringe upon plaintiff's name or rights. Defendants merely filed for a name that happened to be similar, in some respects, to plaintiff's name. In sum, a consideration of the relevant factors for determining whether there is a likelihood of confusion between two names shows that the trial court did not err in holding that actual confusion is not likely to occur.

Plaintiff also argues that the trial court erred in denying its request for damages. On the issue of damages, the trial court concluded: "[T]he Court does not see a causation of the

defendant's [sic] action that caused monetary damages, given that their name is distinctive and they're not in a competitive business . . . ." We agree with the trial court. As noted above, the parties are not direct competitors, making the likelihood of infringement low. It does not appear the instance referenced by plaintiff has caused irreparable harm to plaintiff. Plaintiff has not even presented evidence of the cost, if any, of resolving that one issue. Indeed, as the trial court noted, it would arguably cause more harm to defendants to have to change their name than for plaintiff to notify the city of Detroit of its one clerical mistake.

## C. DISCOVERY

Plaintiff also contends that the trial court's dismissal of its case was premature because plaintiff was not allowed to conduct discovery. Plaintiff argues that the trial court did not issue an order related to discovery and claims it did not conduct discovery because it assumed an opportunity to complete discovery was forthcoming. Plaintiff then summarily claims that the failure to allow plaintiff to conduct discovery contradicts basic due process rights, but cites no law and provides no reasoning for its position. Plaintiff has abandoned this argument. In Michigan, failure to support a contention on appeal constitutes an abandonment of that issue. *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 14; 672 NW2d 351 (2003). A party cannot simply "announce a position . . . then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 406; 651 NW2d 756 (2002), quoting *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). Because plaintiff has failed to properly argue the issue whether the trial court deprived it of due process by not allowing sufficient discovery, we deem it abandoned.

But even if that issue was considered, plaintiff's argument is without merit because the evidence suggests that plaintiff was not prevented from conducting discovery. "Generally, a motion for summary disposition is premature if granted before discovery on a disputed issue is complete. However, summary disposition may nevertheless be appropriate if further discovery does not stand a reasonable chance of uncovering factual support for the opposing party's position." *Oliver v Smith*, 269 Mich App 560, 567; 715 NW2d 314 (2006), quoting *Peterson Novelties, Inc*, 259 Mich App at 24-25. The lower court record shows that plaintiff submitted with its motion for summary disposition multiple records of communication between the parties, lists of entities with similar names, incorporation information for defendants' entities, and more. There is no indication plaintiff attempted to submit other documents—for example, a set of interrogatories—and was unable to do so because of the trial court's actions, and plaintiff does not refer us to any such attempt or document. Plaintiff also failed to identify what additional discovery might have been necessary. In addition, the trial court entered a status conference scheduling order on November 23, 2020 giving the parties until February 26, 2021 to complete discovery, which shows plaintiff was informed of the timeline for discovery since at least November 23, 2020. This record leads us to the conclusion that further discovery would not have uncovered factual support for plaintiff's position so as to change the outcome of the proceedings. See *Oliver*, 269 Mich App at 567. Accordingly, this claim is without merit.

In summary, the trial court did not err when it denied plaintiff's motion for summary disposition and dismissed plaintiff's complaint.

Affirmed.


/s/ Michael F. Gadola
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly