*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Guardianship of LISA BROSAMER.

PATRICIA BROSAMER, Guardian of LISA BROSAMER, a legally protected person,

Petitioner-Appellee,

v

LENAWEE COMMUNITY MENTAL HEALTH AUTHORITY,

Respondent-Appellant.

FOR PUBLICATION
May 16, 2019
9:00 a.m.

No. 346394
Lenawee Probate Court
LC No. 79-033680-DD

Before: REDFORD, P.J., and MARKEY and K. F. KELLY, JJ.

PER CURIAM.

In this guardianship case, respondent appeals as of right the probate court's order enjoining respondent from transferring a protected individual, Lisa Brosamer (Lisa), from one community residential placement—College Avenue—where Lisa has resided since 2009, to another residential placement—Westhaven. Respondent contends on appeal that (1) the probate court erroneously applied MCL 330.1536 and effectively rewrote the statute, and (2) the probate court abused its discretion by granting permanent injunctive relief. We disagree and affirm.

## I. BASIC FACTS

Lisa is severely intellectually disabled and unable to care for herself or manage her estate. Her mother, Lucille, was Lisa's predecessor guardian and cared for Lisa in her home from Lisa's birth on February 22, 1961 through October 3, 2006, when, based upon Lucille's declining health, Lisa transitioned to a residential treatment facility at 3376 Marvin Drive, Adrian, MI 49221. On March 7, 2008, Lisa was transferred to another facility at 451 South Main Street, Adrian, MI 49221. Finally, on March 1, 2009, Lisa was transferred to her current residence at College Avenue. Petitioner was appointed successor plenary guardian of Lisa on December 2, 2009.

On September 26, 2018, petitioner filed the petition that led to this appeal. Petitioner contended that respondent was planning to transfer Lisa from College Avenue to another community placement at Westhaven, and sought an ex parte order denying the transfer on the ground that it would be detrimental to Lisa pursuant to MCL 330.1536. The probate court granted ex parte relief and later held a full hearing. In lieu of testimony, respondent presented three affidavits from its employees indicating that the transfer would not be detrimental to Lisa, and therefore, respondent was statutorily entitled to move forward with the transfer. Petitioner presented four witnesses familiar with Lisa's situation who all testified that such a move would be detrimental to Lisa. Lisa's lawyer-guardian ad litem indicated that, in his opinion, the probate court should favor the testimony of petitioner because of petitioner's heavy involvement in the welfare of Lisa, and because petitioner's history with Lisa made petitioner the most capable of predicting the outcome of a transfer. The probate court summarized the affidavits provided by respondent and the testimony from the evidentiary hearing and concluded that the "move certainly does appear to be something that would be detrimental to Lisa."

## II. APPLICATION OF MCL 330.1536

On appeal, respondent argues that the probate court clearly erred in determining that transferring Lisa from College Avenue would be detrimental to her wellbeing. It argues that the probate court judicially revised MCL 330.1536 and created a right for plenary guardians to veto the decisions of mental health authorities where the Legislature did not intend for such a veto to exist. We disagree. Although respondent frames its argument on appeal as one regarding statutory interpretation, respondent's argument actually concerns the probate court's factual findings.

The probate court's factual findings are reviewed for clear error and its dispositional rulings for an abuse of discretion. *In re Lundy Estate*, 291 Mich App 347, 352; 804 NW2d 773 (2011). A finding is clearly erroneous when, even though there is evidence to support it, "a reviewing court is left with a definite and firm conviction that a mistake has been made." *In re Vansach Estate*, 324 Mich App 371, 385; 922 NW2d 136 (2018) (quotation marks omitted). "An abuse of discretion occurs when the court's decision falls outside the range of reasonable and principled outcomes," or when the court fails "to operate within the correct legal framework." *Vansach*, 324 Mich App at 385 (quotation marks omitted). Further, "[t]he reviewing court will defer to the probate court on matters of credibility, and will give broad deference to findings made by the probate court because of its unique vantage point regarding witnesses, their testimony, and other influencing factors not readily available to the reviewing court." *In re Erickson Estate*, 202 Mich App 329, 331; 508 NW2d 181 (1993).

MCL 330.1536 provides:

(1) A resident in a center may be transferred to any other center, or to a hospital operated by the department, if the transfer would not be detrimental to the resident and the responsible community mental health services program approves the transfer.

(2) The resident and his or her nearest relative or guardian shall be notified at least 7 days prior to any transfer, except that a transfer may be effected earlier if

necessitated by an emergency. In addition, the resident may designate 2 other persons to receive the notice. If the resident, his or her nearest relative, or guardian objects to the transfer, the department shall provide an opportunity to appeal the transfer.

(3) If a transfer is effected due to an emergency, the required notices shall be given as soon as possible, but not later than 24 hours after the transfer.[1]

The evidence in this case primarily came from seven people: three affiants and four testifying witnesses. Of those seven people, only four of them provided evidence that they had either a history with Lisa or daily interaction with Lisa such that they might reasonably be capable of opining as to how the proposed transfer might affect Lisa's wellbeing. All four of the witnesses demonstrated a personal history with Lisa, and all of them concluded that transferring Lisa to Westhaven would be detrimental.

Petitioner testified that Lisa had thrived at College Avenue largely because of the relationships she had formed with residents and staff, including forming a close bond with a resident that had resided at College Avenue even longer than Lisa. Petitioner was able to testify that, in light of her history with and personal knowledge of Lisa, starting anew at Westhaven would be detrimental to Lisa and would cause her to regress. Notably, Lisa's lawyer-guardian ad litem, who has been involved in the case since at least 2011, reported that, due to petitioner's "extensive involvement with [Lisa] over the years," petitioner was in a superior position to any of the other witnesses or affiants "to know what [would] be detrimental to Lisa."

Lisa's doctor of 14 years testified that Lisa relies on familiarity with those around her to comfort and calm her, and that given Lisa's age and disability, Lisa would "not be able to adjust" and did not have the "coping mechanism" to handle a transfer from College Avenue. A direct care staff at College Avenue, who had known Lisa for 16 years and worked directly with Lisa on a regular basis for one year, testified that Lisa relied upon familiarity with staff and peers, that Lisa would not respond well to significant changes, and that transferring Lisa would be to Lisa's detriment. Finally, a former manager at Westhaven testified that she had known Lisa for 20 years, that Westhaven was not as well suited for Lisa as College Avenue, and that there was a particularly high risk of Lisa having altercations with an aggressive individual at Westhaven were Lisa to be transferred.

None of the affidavits provided by respondent suggested that the affiants had a history with Lisa comparable to petitioner's witnesses. Respondent's executive director reported that she was responsible for over 1,850 mental health consumers, and that the determination that Lisa was prepared to transfer to Westhaven was not personally made by the executive director, but by unnamed "expert" staff. In another affidavit, respondent's supervisor of developmentally disabled consumers did not speak to her level of personal knowledge of Lisa, and instead spoke

---

[1] MCL 330.1536 has been amended and, effective March 28, 2019, the word "center" in subsection (1) changes to "facility," and the word "prior" in subsection (2) changes to "before." MCL 330.1536, as amended by 2018 PA 596.

primarily to the fact that the supervisor had communicated with petitioner on several occasions about the proposed transfer. Finally, Lisa's case manager testified that she had only been assigned to Lisa's case since June 18, 2018, which, coincidentally, was the same month that respondent determined that another consumer needed a bed at College Avenue and the same month that respondent determined Lisa could be transferred. Petitioner testified that the case manager was assigned to the case after Lisa's former case manager of 10 years retired, and testified that she asked respondent's executive director to replace the new case manager because petitioner could not understand how the case manager could conclude that a transfer was appropriate while being so new and unfamiliar with Lisa.

That the case manager was not as familiar with Lisa as petitioner's witnesses is evidenced by comparing the case manager's affidavit with the testimony of petitioner, the former Westhaven manager, and the direct care staff at College Avenue. As the only evidence that one of Lisa's visits to Westhaven had gone well, Lisa's case manager stated that "Lisa came into the home and gave everyone hugs." However, the former Westhaven manager described Lisa as a "hugger," and the College Avenue direct care staff indicated that Lisa giving "a couple of the staff members that worked for Westhaven a hug" was not indicative of Lisa being interactive or otherwise having a productive visit at Westhaven. Additionally, petitioner characterized the case manager's statement as an exaggeration, noting that Lisa hugged the manager at Westhaven—the same manager that testified at trial—because Lisa recognized her.

Overall, witnesses deeply familiar with Lisa testified that transferring Lisa from College Avenue would be detrimental to her wellbeing. Far from judicially revising MCL 330.1536 or creating a "veto right," the probate court narrowly tailored its role in the case to the only issue it was statutorily authorized to determine: whether respondent's proposed transfer of Lisa would be detrimental to Lisa's wellbeing. We are not left with a definite and firm conviction that a mistake was made. To the contrary, the probate court's finding with respect to detriment was well supported by the evidence.

III. PERMANENT INJUNCTION

Respondent argues that the probate court abused its discretion by granting a permanent injunction, and that the injunction went too far because it enjoined respondent not just from transferring Lisa to Westhaven, but from transferring Lisa anywhere else in the future. We disagree.

As a preliminary matter, we note that the parties disagree about whether the probate court's order serves as a permanent injunction. For purposes of this appeal, we will assume that the order serves as a permanent injunction from transferring Lisa to any facility at any time without court approval.

"A trial court's decision to grant or deny injunctive relief is reviewed for an abuse of discretion." *Janet Travis, Inc v Preka Holdings, LLC*, 306 Mich App 266, 274; 856 NW2d 206 (2014). The court abuses its discretion when it chooses an outcome outside the range of reasonable and principled outcomes. *Vansach*, 324 Mich App at 385. "The Court of Appeals has succinctly stated that injunctive relief is an extraordinary remedy that issues only when justice requires, there is no adequate remedy at law, and there exists a real and imminent danger

of irreparable injury." *Pontiac Fire Fighters Union Local 376 v Pontiac*, 482 Mich 1, 8; 753 NW2d 595 (2008) (quotation marks and citations omitted). In determining whether a permanent injunction was properly issued, this Court considers:

> "(a) the nature of the interest to be protected, (b) the relative adequacy to the plaintiff of injunction and of other remedies, (c) any unreasonable delay by the plaintiff in bringing suit, (d) any related misconduct on the part of the plaintiff, (e) the relative hardship likely to result to defendant if an injunction is granted and to plaintiff if it is denied, (f) the interests of third persons and of the public, and (g) the practicability of framing and enforcing the order of judgment." [*Janet Travis*, 306 Mich App at 274, quoting *Wayne Co Employees Retirement Sys v Wayne Co*, 301 Mich App 1, 28; 836 NW2d 279 (2013), aff'd in part and vacated in part 497 Mich 36 (2014).]

"Additionally, '[c]ourts balance the benefit of an injunction to a requesting plaintiff against the damage and inconvenience to the defendant and will grant an injunction if doing so is most consistent with justice and equality.' " *Dep't of Environmental Quality v Gomez*, 318 Mich App 1, 34-35; 896 NW2d 39 (2016) (alteration in original), quoting *Janet Travis*, 306 Mich App at 274-275.

The probate court did not abuse its discretion in granting permanent injunctive relief. With respect to the nature of the interest the injunction serves to protect, it was Lisa's overall wellbeing. There was a substantial amount of testimony that Lisa's transfer to Westhaven would be detrimental to her wellbeing, not simply because Westhaven was less suited to Lisa's needs than College Avenue, but because Lisa was well adjusted, familiar, and thriving at College Avenue, and thus, transfer of Lisa to any other facility would be detrimental. With respect to the relative adequacy of the permanent injunction versus other potential remedies, respondent continues to argue, in contradiction to the evidence, that Lisa's transfer from College Avenue would not be detrimental, and thus, the injunctive relief would seem the most adequate means of ensuring that respondent does not transfer Lisa to the detriment of her wellbeing. There is no evidence that petitioner made any unreasonable delays in filing her petition for an injunction, nor is there evidence that petitioner engaged in any form of misconduct.

Being sensitive to the fact that respondent must walk the tightrope of balancing the needs of consumers—sometimes against one another—with the limited resources that it has, MCL 330.1536 is clear that respondent cannot transfer a consumer if the transfer would be detrimental to that consumer. Thus, the relative hardship on respondent that the injunction imposes is no greater than the hardship imposed by MCL 330.1536 itself. Contrarily, the hardship Lisa may endure if she were to be transferred to the detriment of her wellbeing is significant. Additionally, although third parties and the public have an interest in respondent's ability to transfer consumers and balance its resources for the benefit of the community, Lisa has the right to be free of detrimental transfers, and with respect to MCL 330.1536, the interests of third parties in transfers that might be detrimental to Lisa are not relevant to whether the transfer is permissible; and, we note that nothing bars respondent from seeking to have the injunction lifted if a transfer that would not be detrimental to Lisa's wellbeing arises. Finally, the injunction will not be impractical to enforce.

Based upon the above factors, and considering there was no adequate remedy at law to ensure that respondent would not be transferred, the probate court's injunction was not outside the range of reasonable and principled outcomes.

Affirmed.

/s/ James Robert Redford
/s/ Jane E. Markey
/s/ Kirsten Frank Kelly